TRENTON H. NORRIS (Bar No. 164781)
**HOGAN LOVELLS US LLP**
4 Embarcadero Center, Suite 3500
San Francisco, California 94111
Telephone:(415) 374-2300
Facsimile:(415) 374-2499
trent.norris@hoganlovells.com

VASSI ILIADIS (Bar No. 296382)
JOSEPH R. O'CONNOR (Bar No. 274421)
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:(310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
joe.oconnor@hoganlovells.com

*Attorneys for Defendant*
IT'S A NEW 10, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| MARIA CORONA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IT'S A NEW 10, LLC,<br><br>Defendant. | Case No.: 3:25-cv-00377-GPC-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT IT'S A NEW 10, LLC'S MOTION TO DISMISS COMPLAINT**<br><br>Judge: Hon. Gonzalo P. Curiel<br>Courtroom: 2D<br><br>Hearing Date: July 25, 2025<br>Hearing Time: 1:30 PM |
|---|---|

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................. 2

III. LEGAL STANDARD .......................................................................................... 4

IV. ARGUMENT ....................................................................................................... 6

    A. The Complaint Must Be Dismissed Because It Does Not Allege Facts Establishing a Violation Of California's "Made In USA" Law. ................................................................................................................ 6

        1. The Complaint Does Not Allege That the Product Or Any Article, Unit, or Part Thereof Has Been Entirely or Substantially Made, Manufactured, or Produced Outside of the United States. ........................................................................................ 6

        2. The Complaint Does Not Allege That the Product Is Outside the California Statute's Safe Harbors. ........................................ 8

    B. Plaintiff Does Not Have Standing To Assert Claims Over Unpurchased, Unidentified Products. ................................................. 13

V. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaei v. Rockstar, Inc.*,
  224 F. Supp. 3d 992 (S.D. Cal. 2016) .................................................. 9, 10, 11, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 4, 10

*Avakian v. Wells Fargo Bank, N.A.*,
  827 F. App'x 765 (9th Cir. Oct. 27, 2020) ......................................................... 5

*Baum v. J-B Weld Co., LLC*,
  2020 WL 4923624 (N.D. Cal. Aug. 21, 2020) ............................................ 11, 12

*Bauman v. Australian Gold*,
  2019 WL 2329885 (S.D. Cal. May 31, 2019) ................................................... 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 4, 5

*Benson v. Kwikset Corp.*,
  152 Cal. App. 4th 1254, *as modified on denial of reh'g* (July 26,
  2007) ............................................................................................................ 1, 7, 8

*Brazil v. Dole Food Co.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) .................................................................. 5

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ................................................................................ 11, 12

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ............................................................................................ 5

*Fitzpatrick v. Tyson Foods, Inc.*,
  2016 WL 5395955 (E.D. Cal. Sept. 27, 2016), *aff'd*, 714 F. App'x
  797 (9th Cir. 2018) ............................................................................. 6, 8, 10, 11

*Flodin v. Cent. Garden & Pet Co.*,
  2023 WL 3607278 (N.D. Cal. Mar. 9, 2023) ..................................................... 11

*Flodin v. Cent. Garden & Pet Co.*,
   2023 WL 4686016 (N.D. Cal. July 21, 2023) ....................................................... 10

*Gross v. Vilore Foods Co., Inc.*,
   2020 WL 6319131 (S.D. Cal. Oct. 28, 2020) ......................................................... 5

*Hass v. Citizens of Human., LLC*,
   2016 WL 7097870 (S.D. Cal. Dec. 6, 2016) .................................... 10, 11, 13, 14

*Hood v. Handi-Foil Corp.*,
   2024 WL 4008711 (N.D. Cal. Aug. 29, 2024) ..................................... 8, 9, 10, 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................. 5

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ......................................................................................... 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................... 13

*Oxina v. Lands End*,
   2015 WL 4272058, at *6 (S.D. Cal. June 19, 2015) .................................... 14, 15

*Puri v. Khalsa*,
   674 Fed. App'x. 679 (9th Cir. Jan. 6, 2017) ......................................................... 5

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) ............................................................................... 5

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ............................................................................... 5

**Statutes**

15 U.S.C. § 45 ............................................................................................................ 12

15 U.S.C. § 45a .......................................................................................................... 12

Fed. R. Civ. P. § 8(a)(2) .......................................................................................... 4, 9

Fed. R. Civ. P. § 9(b) .............................................................................................. 5, 9

Fed. R. Civ. P. § 12(b)(1) ........................................................................................... 5

Fed. R. Civ. P. § 12(b)(6) ................................................................................................ 4

Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq* ..................... 4, 5, 11

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........... 4, 5, 11, 12

False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* .................... 4, 5, 11

Cal. Bus. & Prof. Code § 17533.7 ............................................................... *passim*

Cal. Bus. & Prof. Code § 17533.7(a) ................................................................. 1, 6, 8

Cal. Bus. & Prof. Code § 17533.7(b) ..................................................................... 6, 8

Cal. Bus. & Prof. Code § 17533.7(c) .......................................................................... 6

Cal. Bus. & Prof. Code § 17533.7(c)(1) .................................................................. 8, 9

Cal. Bus. & Prof. Code. § 17533.7(c)(1)(A) ............................................................... 9

**Other Authorities**

16 C.F.R. § 323 ........................................................................................................ 12

16 C.F.R. § 323.1(a) ................................................................................................ 12

16 C.F.R. § 323.2 ..................................................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Maria Corona brings this putative class action alleging that Defendant It's A New 10, LLC ("IANT") manufactures and sells products that are falsely represented as being "Made in the USA." Plaintiff bases her allegations on California's consumer protection statutes and various state common law principles. But Plaintiff does not allege that IANT's products were manufactured outside the United States. Nor could she. Instead, she bases her causes of action solely on allegations that ingredients in IANT's products were sourced from outside the United States.

Because Plaintiff fails to allege any viable claim under California law, her Complaint must be dismissed. The California Legislature has made a deliberate decision that products sold in California may be labeled as "Made in the USA" even if they contain foreign sourced ingredients. This considered decision by the Legislature in 2016 was made in recognition of the growing complexity in international trade and the difficulty of complying with a strict mandate regarding domestic origin labeling. Specifically, California law prohibits "Made in USA" claims only for products that are "entirely or substantially made, manufactured, or produced outside of the United States." Cal. Bus. & Prof. Code § 17533.7(a). The California Court of Appeal has interpreted this language to mean that "one would not violate the statute by making, manufacturing, or producing merchandise solely in the United States ***even though using raw materials acquired from a foreign source***." *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1272, *as modified on denial of reh'g* (July 26, 2007) (emphasis added). That alone disposes of Plaintiff's Complaint, which does not allege the products at issue were "made, manufactured, or produced outside of the United States."

Furthermore, under the statute, Products may be advertised in California as "Made in the USA" even if they include up to 10% of foreign "articles, units, or

parts" (measured as a percentage of the wholesale value of the product) if the parts are not available in the United States, and 5% if the foreign "articles, units, or parts" are available in the United States. Plaintiff's Complaint must also be dismissed because Plaintiff fails to allege any facts showing that IANT's products do not fall within these safe harbors for products labeled as "Made in the USA." And because Plaintiff merely complains of conduct that the California Legislature has already decided is lawful, all of Plaintiff's claims must fail under California's safe harbor doctrine.

In addition, Plaintiff's allegations about products that she did not see, rely on, or pay money for cannot provide a basis for standing to sue over those unpurchased products. Plaintiff seeks to represent a putative class of consumers who purchased not just the product that she herself purchased, but unspecified other products allegedly manufactured by IANT with unspecified ingredients in unspecified amounts. But Plaintiff could not have suffered any injury or have been harmed by products that she did not purchase, nor can she represent a class of consumers who purchased products that are not substantially similar to the product that Plaintiff purchased. Plaintiff does not allege facts showing that the purported "Class Products" that she did not purchase are substantially similar to the product she alleges she purchased. Plaintiff therefore does not have standing to sue over those products, and Plaintiff's claims regarding unspecified other products should also be dismissed.

## II.   BACKGROUND

Defendant IANT is a leading haircare product company that manufactures products for women and men, including shampoos, conditioners, and leave-in hair care products. Complaint, Dkt. 1 ("Compl.") ¶¶ 1, 18–19, 45–48. One of its best known products is its Silk Express Miracle Silk Leave-In, *id.* ¶ 7, a product that smooths out tangles in the consumer's hair. Consumers can purchase IANT's products through several different sales channels, including IANT's own website,

online third-party platforms like Amazon.com, professional haircare salons, and brick-and-mortar stores. *Id.* ¶ 2.

Plaintiff alleges that she is a San Diego County resident who was purportedly deceived by the statement "Made in the USA" on the packaging of IANT's Silk Express Miracle Silk Leave-In product. *Id.* ¶¶ 7, 14, 65. Plaintiff alleges that she purchased the Silk Express Miracle Silk Leave-In product in Carlsbad, California. *Id.* ¶ 53. According to Plaintiff, the product was "labeled, marketed and sold to consumers as 'Made in the USA.'" *Id.* ¶ 7. Plaintiff alleges that the product was not "Made in the USA" because it contains "palm oil, *Camellia sinensis* (tea) leaf extract, hydrolyzed silk, and silk amino acids," ingredients that Plaintiff alleges do not "originate from the United States." *Id.* ¶¶ 45–48. Plaintiff makes no allegations as to where the product was "made, manufactured, or produced."

As for the ingredients, Plaintiff relies on websites that allegedly show that some of the ingredients are not produced in commercial quantities in the United States. *Id.* ¶ 45 n.5, ¶ 46 n.6–8. Plaintiff alleges that "reasonable consumers assume the product contains no foreign-sourced ingredients or components," *id.* ¶ 56, and had she known that the "ingredients were not actually of U.S. origin, she would not have purchased the Product." *Id.* ¶ 61.

In addition to the product Plaintiff purchased, Plaintiff also alleges that other IANT products are allegedly labeled as "Made in the USA" and contain ingredients that are not of U.S. origin. Plaintiff alleges that IANT's Miracle Moisture Shampoo product contains "acai [sic] berry extract, along with other ingredients and components that are not sourced from the United States." *Id.* ¶ 46. Plaintiff also alleges that IANT's Silk Express Miracle Daily Shampoo "contains palm oil and hydrolyzed silk," that the Miracle Daily Conditioner "contains silk amino acids," and that the Miracle Blowdry Volumizer product "contains hydrolyzed silk." *Id.* ¶ 47.

Plaintiff does not limit her claims to just those products that she allegedly purchased or the products identified in the Complaint. Plaintiff purports to bring

claims over unidentified "other haircare products—including, but not limited to, those featured on [IANT's] website (together with the Product, the 'Class Products')." *Id.* ¶ 11. Plaintiff does not identify which "other products" are included in the "Class Products," what ingredients these "Class Products" contain, or where those ingredients originated.

Furthermore, while Plaintiff alleges that IANT's products are "substantially made with foreign ingredients," *id.* ¶ 44, Plaintiff does not allege how much of any allegedly foreign-sourced ingredient is included in any product. Nor does Plaintiff allege that IANT's products were manufactured outside the United States—only that IANT's products include ingredients and components that do not originate from within the United States.

Based on these allegations, Plaintiff brings claims under California's consumer protection statutes—the Consumers Legal Remedies Act (CLRA), the Unfair Competition Law (UCL), and the False Advertising Law (FAL). *Id.* ¶¶ 87–158. Plaintiff also asserts a variety of common law claims such as breach of express warranty, unjust enrichment, and negligent and intentional misrepresentation. *Id.* ¶¶ 159–99. Plaintiff brings this case as a class action and seeks to certify a putative class of "persons in California who purchased one or more of the Class Products labeled 'Made in the USA' or any derivative thereof on the product or packaging, and that were made with or contained ingredients or components not grown or manufactured in the USA" within the applicable statute of limitations. *Id.* ¶ 76.

## III. LEGAL STANDARD

Motions to dismiss should be granted under Rule of Civil Procedure 12(b)(6) when a plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. Pro. 8(a)(2). A claim is plausible when the allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court generally accepts

material allegations as true, a plaintiff must allege "more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The heightened pleading standard of Rule 9(b) applies to causes of action under the UCL, CLRA, FAL, and claims for unjust enrichment, breach of warranty, and negligent and intentional misrepresentation because each of these causes of action is grounded in fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (claims under the UCL and CLRA); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013) (claims under the FAL); *Puri v. Khalsa*, 674 Fed. App'x. 679, 690 (9th Cir. Jan. 6, 2017) (unjust enrichment claim); *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. Oct. 27, 2020) (negligent and intentional misrepresentation claims); *Gross v. Vilore Foods Co., Inc.*, 2020 WL 6319131, at *2 n.1 (S.D. Cal. Oct. 28, 2020) (a plaintiff's "failure to plead with specificity also impacts their breach of express warranty claim"). To satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Finally, motions to dismiss should also be granted where a plaintiff's claims fail to allege facts establishing "subject-matter jurisdiction" under Article III. Fed. R. Civ. Pro. 12(b)(1). A plaintiff "must demonstrate standing for each claim he seeks to press," *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008), and "bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

## IV. ARGUMENT

### A. The Complaint Must Be Dismissed Because It Does Not Allege Facts Establishing a Violation Of California's "Made In USA" Law.

#### 1. The Complaint Does Not Allege That the Product Or Any Article, Unit, or Part Thereof Has Been Entirely or Substantially Made, Manufactured, or Produced Outside of the United States.

California's Legislature has specifically addressed when products may not be labeled as "Made in the U.S.A.," and Plaintiff here fails to allege plausible or specific facts showing that IANT violated that law.

Prior to January 1, 2016, the California "Made in USA" statute provided:

> It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words "Made in U.S.A." "Made in America," "U.S.A.," or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

Cal. Bus. & Prof. Code § 17533.7 (2015). *See Fitzpatrick v. Tyson Foods, Inc.,* 2016 WL 5395955, at *1 (E.D. Cal. Sept. 27, 2016), *aff'd*, 714 F. App'x 797 (9th Cir. 2018) (citing Cal. Bus. & Prof. Code § 17533.7 (2015)). Effective January 1, 2016, the statute was changed to convert the language above into subsection (a), without any revisions to this language whatsoever, while adding subsections (b) and (c)—which are discussed below—as exceptions and safe harbors to this strict rule.

In the only court decision cited in the Complaint (at ¶ 4), the California Supreme Court in 2011 affirmed a lower court's application of this statute finding that locksets labeled as "Made in U.S.A" violated California law because screws and pins in the locksets—which are "articles, units, or parts" of the finished product—were manufactured in Taiwan, and assembly of a latch component—also an "article, unit, or part"—was performed in Mexico. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 318 (2011). This strict interpretation eventually prompted the Legislature to

establish exceptions and safe harbors discussed below.

But the language of the original statute carries over, and it has also been interpreted in binding precedent. The Court of Appeal in the *Kwikset* litigation also interpreted the statute's terms "made, manufactured, or produced." The Court of Appeal concluded that "one would not violate the statute by making, manufacturing, or producing merchandise solely in the United States **even though using raw materials acquired from a foreign source**." *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1272, *as modified on denial of reh'g* (July 26, 2007) (emphasis added). The Court of Appeal held that the California law is focused on *manufacturing and production activity*, not on *raw materials*, and drew a distinction between a "raw material" and an "article, unit, or part." *See id.* at 1771–72. As a result, reading these two rulings in tandem, if the metal in the lockset came from overseas, where the constituent ore was mined and the metal forged, but then that raw material was manufactured into a lockset in the United States, the finished product would meet the California standard. But a lockset assembled in the United States using screws from overseas would not meet the California standard.

The Complaint, and each of its causes of action, rests solely on the allegation that "the product purchased by Plaintiff is substantially and materially composed of indispensable foreign ingredients." Compl., ¶ 6. Plaintiff does not allege that any IANT product was manufactured outside the United States—only that IANT's products include ingredients like palm oil and açaí berry extract that do not originate from the United States. *See id.* ¶ 8 (the "Product is made with numerous ingredients and components, that are not grown, sourced, or otherwise made in the United States"); *id.* ¶ 45 (alleging that "palm oil, *Camellia sinensis* (tea) leaf extract, hydrolyzed silk, and silk amino acids" do not "originate in the United States").

This is insufficient for two reasons. First, these "ingredients" are not "articles, units, or parts" that are made or manufactured and can be disassembled from the finished hair care products, but raw materials that are processed with other raw

materials to make IANT's products. They are raw materials used to make the finished product, just like the metal ore used to make the locksets considered by the Court of Appeal in *Benson v. Kwikset Corp.*, *supra.* Second, the Complaint contains no allegation as to where the ***product*** was "made, manufactured, or produced." The Complaint therefore fails to alleges fact sufficient to state a claim for violation of the current subsection (a) of the California "Made in USA" statute. Bus. & Prof. Code § 17533.7(a).

### 2. The Complaint Does Not Allege That the Product Is Outside the California Statute's Safe Harbors.

In 2016, the California Legislature decided to shift away "from a strict prohibition on domestic origin labeling to one that exempts sellers from selling products that were made in the United States but contain up to a certain percentage of foreign sourced components." *Fitzpatrick,* 2016 WL 5395955, at *2. Thus, "acknowledging the evolving complexity around global trade, the California legislature crafted two safe harbors for manufacturers in Section 17533.7." *Hood v. Handi-Foil Corp.*, 2024 WL 4008711, at *2 (N.D. Cal. Aug. 29, 2024). The California "Made in USA" statute at section 17533.7 now includes "two thresholds below which a product may be labeled 'Made in the U.S.A.' lawfully while including:

(a) foreign inputs comprising no more than ***5 percent*** of the final wholesale value of the manufactured product or

(b) foreign inputs comprising no more than ***10 percent*** of the final wholesale value of the manufactured product *and* the manufacturer can show that it ***cannot*** produce nor ***obtain*** the foreign products ***from a domestic source***."

*Id.* (emphasis added) (citing Cal. Bus. & Prof. Code § 17533.7(b), (c)(1)).

In other words, a product that contains foreign inputs that comprise less than 5% of the wholesale value of the product may lawfully be labeled "Made in USA." Cal Bus & Prof. Code § 17533.7(b). And if the foreign inputs cannot be produced or obtained in the United States, that threshold increases to 10%. Cal. Bus. & Prof. Code

§ 17533.7(c)(1). Plaintiff fails to plausibly allege that any of IANT's products fall outside of these safe harbors, Fed. R. Civ. Pro. 8(a)(2), let alone allege specific facts to show any violation of section 17533.7. Fed. R. Civ. Pro. 9(b).

Plaintiff fails to allege facts showing these safe harbors do not apply. The safe harbors under section 17533.7 are not "affirmative defenses, the burden of which rests on Defendants." *Handi-Foil*, 2024 WL 4008711, at *3. Alleged violations of section 17533.7 are "grounded in fraud," warranting "Rule 9(b)'s heightened pleading standard," *Alaei v. Rockstar, Inc.*, 224 F. Supp. 3d 992, 999 (S.D. Cal. 2016), and Plaintiff must allege "where the allegedly foreign-sourced ingredients were made and what percentage of Defendants' products are comprised of foreign sourced ingredients." *Id.* at 1000.

Plaintiff's Complaint does not include any of these facts. Plaintiff alleges that the product she purchased—Silk Express Miracle Silk Leave-In—contained ingredients that allegedly did not "originate in the United States." Compl. ¶ 45. But Plaintiff fails to allege what percentage of the product is comprised of the allegedly foreign sourced ingredients. Plaintiff similarly fails to allege any facts showing the percentage of foreign ingredients that make up the other products mentioned in the Complaint—the Miracle Moisture Shampoo, Silk Express Miracle Daily Shampoo, Miracle Daily Conditioner, and Miracle Blowdry Volumizer products. *Id.* ¶¶ 46–47. Plaintiff does not identify any ingredients that make up the unidentified "other haircare products" that Plaintiff claims constitute the "Class Products," or even what those products are. *Id.* ¶ 11.

Plaintiff's claims are all the more implausible because Plaintiff has essentially admitted that the foreign ingredients must exceed the higher 10% safe harbor threshold. That higher threshold applies where the "article, unit, or part" cannot be obtained "from a domestic source." Cal. Bus. & Prof. Code. § 17533.7(c)(1)(A). Plaintiff admits that alleged foreign ingredients are not available in the United States. Compl. ¶ 45 n.5, ¶ 46 n.6–8 (alleging that the alleged foreign ingredients are "not

produced in commercial quantities in the United States" and the açaí berry tree "does not grow outside its natural habitat" in Brazil). There is no basis to find that any ingredient exceeds the 10% threshold in any product.

District courts uniformly dismiss claims just like Plaintiff's. In *Alaei v. Rockstar*, for example, the court dismissed plaintiff's claims because she only alleged that "Defendants' products contain various amounts of taurine, guarana seed extract, and milk thistle extract," but failed to specify "what percentage of Defendants' products are comprised of foreign sourced ingredients." 224 F. Supp. 3d at 1000. In *Fitzpatrick v. Tyson Foods*, the Court dismissed Plaintiff's claims because "her complaint does not include any allegations regarding the percentage of foreign sourced materials contained in Defendant's products . . . and failed to adequately allege a violation of the current version of § 17533.7." 2016 WL 5395955, at *4. In *Flodin v. Cent. Garden & Pet Co.*, the court dismissed Plaintiff's claims because allegations that "[a]nything less than 5% of [foreign-sourced] avocado ingredients would be unlikely to provide any real benefit" did "not permit the court to infer more than the mere possibility of misconduct." *Flodin v. Cent. Garden & Pet Co.*, 2023 WL 4686016, at *2 (N.D. Cal. July 21, 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).[1] Plaintiff's Complaint does not provide the Court any basis to do anything other than dismiss Plaintiff's claims.

Because Plaintiff fails to allege that any product falls outside section 17533.7's safe harbors, all of Plaintiff's claims must be dismissed. Under California's "safe

---

[1] *See also Hass v. Citizens of Human., LLC*, 2016 WL 7097870, at *4 (S.D. Cal. Dec. 6, 2016) (dismissing claims because allegations were "insufficient to raise a plausible inference that these materials constitute more than five or ten percent of the total wholesale value of the product as required by the amended § 17533.7"); *Handi-Foil Corp.,* 2024 WL 4008711, at *2 (claims dismissed because plaintiff did not allege "facts about the cost [foreign-sourced] bauxite or price of Defendants' products, the process of manufacturing aluminum foil pans, [] from where the bauxite used in Defendants' products is derived," or "the amount of bauxite comprising Defendants' products").

harbor" doctrine, a Plaintiff cannot use state-law claims to attack conduct that the Legislature permits, regardless of the form of the cause of action. "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). Section 17533.7 creates just such a safe harbor.

Section 17533.7 appears within the FAL, and therefore there can be no alleged violation of the FAL. And Plaintiff cannot plead around the safe harbor by asserting other state law claims based on the same conduct—such as Plaintiff's UCL, CLRA, express warranty, unjust enrichment, and negligent and intentional misrepresentations claims—because "[i]f there is no violation of § 17533.7 and its safe harbor, **no state law claim** will lie to the extent it arises out of the same conduct." *Baum v. J-B Weld Co., LLC*, 2020 WL 4923624, at *3 (N.D. Cal. Aug. 21, 2020) (emphasis added). Courts have dismissed the same causes of action that Plaintiff asserts here because "where there is no viable claim under § 17533.7, the California legislature has determined that no action should lie." *Id.*[2] The Court should do the same here.

---

[2] *Handi-Foil,* 2024 WL 4008711, at *3 (dismissing CLRA, UCL, FAL, express warranty, and unjust enrichment claims because all claims were "predicated on the Defendants' 'Made in U.S.A. label" and "no state law claim will lie to the extent it arises out of the same conduct"); *Fitzpatrick*, 2016 WL 5395955, at *5 ("California's safe harbor doctrine applies in this case and unless Plaintiff can plead facts actionable under the amended statute, her claims must be dismissed"); *Hass,* 2016 WL 7097870, at *4 (dismissing UCL and CLRA claims because no violation of section 17533.7 was alleged, California's safe harbor doctrine "forecloses both of Plaintiff's additional claims based on that alleged conduct"); *Alaei*, 224 F. Supp. 3d at 1001 (UCL and CLRA claims failed because plaintiff could not "attack conduct which the legislature has thoughtfully considered and deemed lawful"); *Flodin v. Cent. Garden & Pet Co.*, 2023 WL 3607278, at *2 (N.D. Cal. Mar. 9, 2023) ("The remainder of Plaintiffs' claims predicated on the 'Made in the USA' representation are consequently barred by the safe harbor doctrine.").

Nor does Plaintiff's reference to Federal Trade Commission (FTC) regulations cure the deficient claims. In her Complaint, Plaintiff alleges that FTC regulations define the meaning of "Made in the United States claims" and whether it can be used on the packaging of products "with ingredients or components that are not made or sourced in the United States." Compl. ¶ 26 (citing 16 C.F.R. §§ 323.1(a), 323.2). But those regulations do not provide a private right of action, and the only way that Plaintiff can assert a claim under those regulations is by asserting a California state-law UCL claim that borrows a purported violation of those statutes. That is why the Complaint alleges a violation of the UCL's "unlawful" prong on the basis that Defendant purportedly violated the "federal Made in USA Labeling Rule, 16 C.F.R. Part 323." *Id.* ¶ 121.

Plaintiff's UCL claim, even if based on FTC regulations, is still barred by California's safe harbor because "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech,* 20 Cal. 4th at 182. Indeed, the Northern District of California in *Baum* rejected the very same argument: "[E]ven if Plaintiff could prove a violation of the FTC Act (15 U.S.C. §§ 45 and 45a)[3] by showing that the foreign content of Defendant's products exceeded the 'all or virtually all' federal standard, no UCL claim would lie unless Plaintiff could show that the foreign content exceeded five percent of the total wholesale value of the product." *Baum*, 2020 WL 4923624, at *4. The same is true here.

In short, Plaintiff does not plausibly or specifically allege that the "Made in the U.S.A." statements on IANT's products fall outside of California's safe harbors under California Business and Professions Code section 17533.7. As a result, Plaintiff's Complaint and all causes of action must be dismissed.

---

[3] The FTC regulations that Plaintiff relies on in the Complaint (16 C.F.R. §§ 323.1(a), 323.2) were promulgated pursuant to the FTC Commissioner's authority under 15 U.S.C. § 45a.

### B. Plaintiff Does Not Have Standing To Assert Claims Over Unpurchased, Unidentified Products.

Plaintiff also fails to plead that she has standing to sue over products she did not purchase. A "threshold requirement for justiciability in federal court is that the plaintiff have standing to assert the claims brought" and, as the "sole proposed class representative," Plaintiff has the burden of showing "that Article III standing exists in this case." *Hass,* 2016 WL 7097870, at *6. Plaintiff must have "suffered an injury in fact that is concrete and particularized." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)) (internal quotations omitted). There must be a "causal connection between the injury and the conduct complained of." *Id.* And the injury must be "likely, as opposed to merely speculative." *Id.*

Here, Plaintiff alleges that she only purchased a single product—the Silk Express Miracle Silk Leave-In product. Compl. ¶ 7. Plaintiff however purports to bring class claims over IANT's "other haircare products—including, but not limited to, those featured on its website," which Plaintiff defines as the "Class Products." *Id.* ¶ 11. Plaintiff seeks to represent a class of consumers who purchased "one or more of the Class Products." *Id.* ¶ 76.

Plaintiff does not have standing to assert claims over unidentified "other products." Plaintiff could not have suffered a concrete injury as a result of the labeling of products that she did not see and therefore did not rely on to her detriment. While there is not yet controlling law on this issue in the Ninth Circuit, "the majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Hass,* 2016 WL 7097870, at *6 (internal quotations omitted). The "critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." *Id.* (internal quotations omitted).

Here, Plaintiff does not allege sufficient facts to establish substantial similarity between the Silk Express Miracle Silk Leave-In product that Plaintiff purchased and the unidentified "other products" Plaintiff alleges in the Complaint. For starters, Plaintiff does not even identify what the "other products" are. Plaintiff cites to products featured on IANT's website. Compl. ¶ 11. But the website displays ninety one (91) different products, and Plaintiff does not limit her claims to the products on the website—only that the "Class Products" include, but are "not limited to," those on the website. *See id.* Plaintiff does not allege what ingredients these unspecified products have or what percentage of their ingredients are foreign-sourced. Plaintiff only alleges in conclusory fashion that the "Class Products" were "made with ingredients and components sourced, grown, or manufactured outside the United States." *Id.* ¶ 23. Plaintiff also does not allege that all "Class Products" have the same "Made in the USA" packaging statement, only that the statement is displayed "on the packaging of **nearly every Class Product**," *id.* ¶ 42 (emphasis added), without identifying which products have the statement and which ones do not.

Plaintiff does not have standing to sue over products Plaintiff did not purchase, as other courts have overwhelmingly found in similar circumstances. For example, in *Bauman v. Australian Gold,* in addition to the one tanning product plaintiff allegedly purchased that stated "Made in U.S.A." on the packaging, plaintiff attempted to bring claims over 72 other unpurchased products. 2019 WL 2329885, at *3 (S.D. Cal. May 31, 2019). The court dismissed plaintiff's claims as to the unpurchased products because, "while Plaintiff specifically alleges the foreign ingredients contained in the purchased product," the complaint, like here "was devoid of any mention of the ingredients contained in the unpurchased products." *Id.* at 2. In *Hass*, the court dismissed plaintiff's claims over unpurchased apparel products because the complaint "fails to describe or even identify any other type of apparel product made," let alone "demonstrate that those products and their labels are substantially similar." 2016 WL 7097870, at *7. In *Oxina v. Lands End*, the court

dismissed plaintiff's "Made in USA" allegations over unpurchased products because "[w]ithout any factual detail as to which 'apparel' products Plaintiff refers, the Court cannot make a finding that the unpurchased products bear any similarity to Plaintiff's necktie." 2015 WL 4272058, at *6 (S.D. Cal. June 19, 2015); *see also Alaei*, 2016 WL 11621800, at *3 (dismissing "Made in USA" claims over unpurchased products because "[p]laintiff does not provide any detail regarding, much less identify, the other offending products to which she refers in her complaint").

The same is true here. Plaintiff has not alleged any facts that establish substantial similarity between the product Plaintiff purchased and the purported "Class Products." Plaintiff's claims over unpurchased products therefore must be dismissed.

## V. CONCLUSION

Plaintiff's Complaint is fundamentally premised on a misreading of California's "Made in USA" statute and its misapplication to IANT's products. For the foregoing reasons, IANT respectfully requests that the Court dismiss the Complaint, and all causes of action therein, in its entirety.

Dated:   April 21, 2025                HOGAN LOVELLS US LLP

                                       By: /s/ *Trenton H. Norris*
                                           Trenton H. Norris
                                           *Attorneys for Defendant*
                                           IT'S A NEW 10, LLC