1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CORONA, individually and on behalf of all others similarly situated,<br><br>                                   Plaintiffs,<br><br>v.<br><br>IT'S A NEW 10, LLC,<br><br>                                 Defendant. | Case No.:  25CV377-GPC(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[Dkt. No. 10.]** |

Before the Court is Defendant's motion to dismiss the complaint.  (Dkt. No. 10.)  Plaintiff filed an opposition.  (Dkt. No. 12.)  Defendant filed a reply.  (Dkt. No. 13.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend.

### Background

On February 20, 2025, Plaintiff Maria Corona ("Plaintiff") filed a putative class action complaint against Defendant It's a New 10, LLC ("Defendant") for unlawfully labeling its haircare products with "Made in the USA," when they allegedly contain undisclosed foreign-sourced ingredients and components.  (Dkt. No. 1, Compl. ¶ 22.)  Because Defendant's products are "wholly and substantially made with ingredients and

1

components sourced, grown, or manufactured outside the United States," (*id.* ¶ 23), Plaintiff claims Defendant's labels violate the Federal Trade Commission's "Made in the USA" rule, ("the FTC Rule"), 16 C.F.R. § 323.2, and California's "Made in the USA" rule ("the CA MUSA Rule), Cal. Bus. & Prof. Code section 17533.7.  (*Id.* ¶¶ 4, 25, 26 n.4, 44, 100.)

Around May 5, 2024, Plaintiff was shopping at Marshalls in Carlsbad, California looking to purchase haircare products.  (*Id.* ¶ 53.)  While browsing, she noted Defendant's Silk Express Miracle Silk Leave-In, (the "Product"), with the label "Made in the USA" on its Principal Display Panel ("PDP"), the most prominent and noticeable location on the product.  (*Id.* ¶¶ 7, 37.)  Companies typically place the most important and highest-value selling points on the product's PDP because it is the part that faces the consumer when placed on a shelf or displayed on a website, allowing customers to see the claims without needing to turn the product around.  (*Id.* ¶¶ 38, 39.)  On the Silk Express Miracle Silk Leave-In, the text "MADE IN THE USA" is in capital letters and distinguished with metallic text and placed underneath the size or quantity of the Product and isolated from other wording.  (*Id.* ¶ 40.)  Plaintiff claims that the "Made in the USA" is in the same location on the packing of nearly every one of Defendant's products, or in some cases, in another conspicuous location on the product label.  (*Id.* ¶ 42.)  She asserts that the Product she purchased contains palm oil, camellia sinensis (tea) leaf extract, hydrolyzed silk, and silk amino acids, and none of these ingredients originate from the United States.  (*Id.* ¶ 45.)  Relying on the unqualified "Made in the USA" representation on the Product and looking to purchase a product made in the United States with U.S. ingredients, Plaintiff purchased the product for about $8.99 (excluding tax) for her personal use.  (*Id.* ¶ 55.)  The "Made in the USA" representation was material in her decision to purchase the Product, and had she known the Product was not of U.S. origin, she would not have purchased it.  (*Id.* ¶¶ 59, 61.)

Plaintiff additionally alleges that despite the "Made in the USA" label, the Miracle Moisture Shampoo contains acai berry extract, and other ingredients and components that

are not sourced from the United States; the Silk Express Miracle Daily Shampoo contains palm oil and hydrolyzed silk; the Miracle Daily Conditioner contains silk amino acids; and the Miracle Blowdry Volumizer contains hydrolyzed silk (collectively with Silk Express Miracle Silk Leave-In, the "Products"). (*Id.* ¶¶ 46, 47.)

Plaintiff maintains that Defendant has been misleading consumers for years by representing its products were made in the United States with ingredients and components sourced from the United States. (*Id.* ¶ 43.) According to her, American consumers view products, ingredients and components made in the United States as being of higher quality than their foreign counterparts. (*Id.* ¶ 51.) As such, Defendant either charged a premium for its products compared to its competitors or gained a competitive advantage by having its products chosen over others based on false, unqualified "Made in the USA" claims. (*Id.* ¶ 52.) Plaintiff alleges that Defendant's "Made in the USA" representation on the its products is false, unqualified, unfair and deceptive. (*Id.* ¶ 63.)

As such, Plaintiff alleges violations of (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*; (3) California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq.*; (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation. (*Id.* ¶¶ 87-199.)

Defendant moves to dismiss the complaint for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6), 9(b) and for lack of subject matter jurisdiction under Rule 12(b)(1), and the motion is fully briefed. (Dkt. Nos. 10, 12, 13.)

## Legal Standards

### A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits challenges to a court's subject matter jurisdiction and includes a challenge for lack of Article III standing. *See Chandler v. State Farm Mut. Auto. Inc. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim. *See Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires that a plaintiff show that he has (1) "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent" (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). The plaintiff has the burden to allege Article III standing. *See Lujan*, 504 U.S. at 561. A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya,* 658 F.3d at 1069. Additionally, if plaintiffs "state that they would not have purchased [a product] had there been proper disclosure" of relevant facts, that is sufficient to plead causation. *Id.* at 1070.

**B.    Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), backed by sufficient facts that make the claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, it requires enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020). But courts do not accept as true allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023). Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

**C.    Federal Rule of Civil Procedure 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff bringing such a claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To properly plead fraud with particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id*. The purpose of Rule 9(b) is to require that allegations be "specific enough to give defendants notice of the particular misconduct which is alleged … so that they can defend against the charge and not just deny that they have done anything wrong." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024).

### Discussion

Defendant moves to dismiss arguing that the complaint fails to allege facts establishing a violation of the CA MUSA rule and does not allege facts that its Products fall outside California's safe harbor rules. (Dkt. No. 10-1 at 11-17.[1]) In response, Plaintiff argues that the California safe harbor rules are preempted by the FTC Rule under express and conflict preemption. (Dkt. No. 12 at 12-19.) Alternatively, she asserts that even if the CA safe harbor provisions are not preempted, she has sufficiently alleged that the safe harbor provisions do not apply to the Products at issue. (*Id*. at 19-24.)

/ / /

---

[1] Page numbers are based on the CM/ECF pagination.

**A.    Preemption**

Under the Supremacy Clause of the U.S. Constitution, U.S. CONST. art. VI, cl. 2, state laws that interfere with or contradict federal law are preempted.  *See Rose v. Arkansas State Police*, 479 U.S. 1, 3 (1986).  The Supremacy Clause applies to federal statutes as well as federal regulations.  *City of New York v. F.C.C.*, 486 U.S. 57, 63 (1988) ("[t]he phrase "Laws of the United States" [as stated in the Supremacy Clause] encompasses both federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization"); *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) ("Federal regulations can preempt state law.").  The three types of preemption are: (1) express preemption, when Congress has expressed its intent to displace state law; (2) field preemption, when "Congress takes exclusive control over a particular issue"; and (3) conflict preemption, when state law conflicts with federal law.  *Reynolds,* 100 F.4th at 1032-33.

Conflict preemption applies when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *see also Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002).  The party seeking preemption bears the burden of establishing it.  *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1193 (S.D. Cal. 2021) (citing *Dorsett v. Sandoz, Inc.*, 699 F. Supp. 2d 1142, 1155 (C.D. Cal. 2010)).

The Federal Trade Commission ("FTC") specifically regulates products claiming origin in the United States pursuant to its authority delegated by 15 U.S.C. § 45a.[2]  In 2021, the FTC authorized 16 C.F.R. § 323.2, the FTC Rule, instructing that,

---

[2] "To the extent any person introduces, delivers for introduction, sells, advertises, or offers for sale in commerce a product with a 'Made in the U.S.A.' or 'Made in America' label, or the equivalent thereof,

25CV377-GPC(BLM)

it is an unfair or deceptive act or practice … to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and *all or virtually all* ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2 (emphasis added).  Under the CA MUSA Rule,

It is unlawful … to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words *if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside* of the United States.

Cal. Bus. & Prof. Code § 17533.7(a) (emphasis added).  Two amendments to the CA MUSA Rule, Cal. Bus. & Prof. Code sections 17533.7(b) and (c), ("CA safe harbor provisions"), effective 2016, provide exceptions making a "Made in the USA" label lawful.  It provides that,

(b) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product.

(c)(1) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if both of the following apply:
(A) The manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source.
(B) All of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 10 percent of the final wholesale value of the manufactured product.

in order to represent that such product was in whole or substantial part of domestic origin, such label shall be consistent with decisions and orders of the Federal Trade Commission issued pursuant to section 45 of this title. This section only applies to such labels. Nothing in this section shall preclude the application of other provisions of law relating to labeling."  15 U.S.C. § 45a.

Cal. Bus. & Prof. Code §§ 17533.7(b), (c).

### 1.    Express and Conflict Preemption

Plaintiff argues that the CA safe harbor provisions are preempted by the FTC Rule as they are inconsistent with the FTC Rule because they provide less protection.  (Dkt. No. 12 at 16-17.)  Specifically, she claims the CA safe harbor provisions prevent or frustrate the accomplishment of the federal objective to provide greater labeling law protections and because the FTC Rule imposes a more stringent "all or virtually all" standard than California, the safe harbor provisions patently conflict with the federal requirement.  (*Id.* at 18.)  Defendant replies that the CA safe harbor provisions are different, and not in conflict with the FTC Rule.  (Dkt. No. 13 at 7-9.)

In determining express preemption, the court's role is to determine Congress' intent in enacting the federal regulation at issue.  *See Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 95 (1983).  When there is an express preemption clause, "we do not invoke any presumption against pre-emption but instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'"  *Puerto Rico v. Franklin Cal. Tax–Free Trust*, 579 U.S. 115, 125 (2016) (citation omitted).  As such, "[e]xpress preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law."  *Jones v. Google*, 73 F.4th 636, 641 (9th Cir. 2023).

In this case, Congress did not intend to expressly preempt state law by legislating "Made in the USA" labels.  *See* 15 U.S.C. § 45a ("Nothing in this section shall preclude the application of other provisions of law relating to labeling."); *see* Rules and Regulations Federal Trade Commission, 16 C.F.R. Part 323, 86 Fed. Reg. 37022, 37030 (July 14, 2021) (by enacting 15 U.S.C. § 45a, "Congress declined to expressly preempt state regulation or otherwise demonstrate a clear intent for federal law to occupy the field of regulation in question."); *see also Darnell McCoy v. McCormick & Co., Inc.*, Case No. 1:25-cv-00231-JLT-SAB, 2025 WL 1918546, at *9 (E.D. Cal. July 11, 2025) (findings

and recommendations) ("express preemption does not generally apply to California's Section 17533.7 safe harbor provisions").  Therefore, the Court concludes that the FTC Rule does not expressly preempt the CA safe harbor provisions.

Rather, the FTC Rule preempts a state statute, or regulation "to the extent that such statute, regulation . . . is *inconsistent* with the provisions of this part, and then only to the extent of the inconsistency."[3]  16 C.F.R. § 323.5(a) (emphasis added).

When a preemption statute uses the term "inconsistent", it refers to "contradictory state law requirements, or to requirements that stand as obstacles to federal objectives." *Jones*, 73 F.4th at 642.  But state laws that "supplement, or require the same thing, as federal law, do not stand[ ] as an obstacle, to Congress's objectives, and so are not 'inconsistent.'"  *Id.* (citations and quotation marks omitted).

First, Plaintiff has not shown that the CA safe harbor provisions stand as an obstacle to the federal objectives.  The FTC Rule was enacted under the FTC's statutory authority under Section 5 of the Federal Trade Commission Act to prohibit "unfair or deceptive acts or practices."  *See* 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."); *see also* Rules and Regulations Federal

---

[3] In full, the FTC regulation provides,

> (a) In general . . . this part shall not be construed as superseding, altering, or affecting any other State statute, regulation, order, or interpretation relating to country-of-origin labeling requirements, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this part, and then only to the extent of the inconsistency.

> (b) Greater protection under State law.  For purposes of this section, a State statute, regulation, order, or interpretation is not inconsistent with the provisions of this part if the protection such statute, regulation, order, or interpretation affords any consumer is greater than the protection provided under this part, as determined by the Commission on its own motion or upon the petition of any interested party.

16 C.F.R. §§ 323.5(a), (b).

Trade Commission, 16 C.F.R. Part 323, 86 Fed. Reg. 37022-01, 37026 (July 14, 2021) (noting that "all or virtually all" standard is meant to prevent consumer deception).

Similarly, California enacted the CA MUSA rule in order to protect "consumers from unfair, dishonest, or harmful market practices."  Sen. Judiciary Comm., Bill Analysis of Sen. Bill 633, 2015-2016 Reg. Sess., at 4 (Aug. 13, 2015).  By amending and adding the CA safe harbor provisions, the California legislature recognized that the existing law prohibited the use of the "Made in the USA" label unless the product was entirely made in the United States.  *Id.* at 5.  Recognizing it is the only state that requires "a 100 percent domestic requirement" and is unrealistic standard in a complex, global economy, the California legislature amended the CA MUSA to add in two exceptions based on percentages of the wholesale value of the product.  *Id.* at 6.

The legislative history of both the FTC Rule and CA safe harbor provisions show that both share the same purpose of consumer protection and the prevention of deceptive "Made in USA" labelling.  There is no indication that the FTC intended to provide greater labeling law protections over the CA safe harbor provisions.  As such, Plaintiff has not shown the CA safe harbor provisions stand as an obstacle to the federal objective of protecting consumers.

Second, Plaintiff has not meaningfully shown how the CA safe harbor provisions and the FTC Rule impose contradictory or inconsistent requirements.

In 2021, the FTC codified the "all or virtually" standard for U.S. origin on labels for products after eliciting comments.  *See* Rules and Regulations Federal Trade Commission, 16 C.F.R. Part 323, 86 Fed. Reg. 37022-01 (July 14, 2021). Relying on its past Policy Statement[4], FTC explained that the "all or virtually all" standard to substantiate "Made in USA" means "[a] product that is all or virtually all made in the United States will ordinarily be one in which all significant parts and

---

[4] *See* Enforcement Policy Statement on U.S. Origin Claims, 62 Fed. Reg. 63756-01 (Dec. 2, 1997).

processing that go into the product are of U.S. origin." *Id.* at 37028. "In other words, where a product is labeled or otherwise advertised with an unqualified claim, it should contain only a de minimis, or negligible, amount of foreign content." *Id.* Recognizing that there is no "bright line" rule, the FTC looks at factors to determine if a product is "all or virtually all" made in the United States. *Id.* The FTC explained that at a minimum the final assembly or processing of the product must take place in the United States and besides that, the FTC will consider other factors, "including but not limited to the portion of the product's total manufacturing costs attributable to U.S. parts and processing; how far removed from the finished product any foreign content is; and the importance of the foreign content to the form or function of the product." *Id.*

The FTC declined to adopt a "bright-line, percentage-based standard" as in California, or even a "broad carve-out for inputs not available in the United States" and adopted the preexisting and flexible "all or virtually all" standard because of the vast array of products and how consumers would interpret "Made in the USA" claims differently depending on the product. *Id.* at 37025-37028.

The California legislature also noted the federal "all or virtually all" standard "requires that the significant parts of a final manufactured product come from domestic sources" but recognized the federal standard allows a product to contain a negligible amount of foreign sourced material. Sen. Judiciary Comm., Bill Analysis of Sen. Bill 633, 2015-2016 Reg. Sess., at 6 (Aug. 13, 2015). "As an example, New Balance sneakers are made from roughly 70 percent domestic sources and the Federal Trade Commission allows them to advertise as 'Made in USA.'" *Id.*

Nothing in the FTC's analyses or the California legislature's analyses suggest that the CA safe harbor provisions are inconsistent with the FTC Rule. The FTC and the California legislature were cognizant of the other's standards without stating any conflict or inconsistency. Plaintiff has not provided any authority that a product containing 5 or 10 percent foreign-sourced material under California safe harbor provisions would necessarily fail to meet the FTC Rule's "all or virtually all" standard which is a "flexible"

one.  In fact, the New Balance sneakers example the California legislature referenced stating that the FTC Rule would permit a sneaker made with 70 percent domestic sources shows that "all or virtually all" is pliable.  Sen. Judiciary Comm., Bill Analysis of Sen. Bill 633, 2015-2016 Reg. Sess., at 6 (Aug. 13, 2015).

The Court is also not persuaded by Plaintiff's argument that the CA safe harbor provisions are inconsistent with the FTC Rule because they are "less protective." Plaintiff cites *Lensch v. Armada Corp.*, in support of their argument that state law may be preempted where it provides less protection than federal law.  (Dkt. No. 12 at 17.) However, in *Lensch*, the Washington law expressly permitted behaviors which the Federal Debt Collection Practices Act expressly prohibited.  *Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1186-87 (W.D. Wash. 2011) ("[a]s a matter of law, this statute wholly contradicts the FDCPA, which states the exact opposite").   Here, the FTC Rule of "all or virtually all" does not explicitly forbid the CA safe harbor provisions' requirement of 5 or 10 percent, making the instant case very distinct from *Lensch*'s narrower holding.

Thus, the Court concludes that the CA safe harbor provisions, sections 17533.7(b) & (c) are not preempted by the FTC Rule expressly or by conflict preemption.  *See Darnell McCoy*, 2025 WL 1918546, at *9 (findings and recommendations) (FTC rule did not preempt CA safe harbor provisions under express or conflict preemption).

**B.    Whether the Consumer Fraud Statutes Fail to State a Claim**

Defendant seeks dismissal of all causes of action based on Plaintiff's failure to allege facts establishing a violation of CA MUSA Rule and that its products fall outside of the CA safe harbor provisions because each cause of action is based on the false representation that the Product is "Made in the USA."  (Dkt. No. 10-1 at 16.)  However, the Court notes that Defendant fails to tether its arguments to each cause of action.  On a Rule 12(b)(6) motion, Defendant must articulate the elements of each cause of action and explain why the complaint fails to state a claim.  *See Corbett*, 567 F. Supp. 3d at 1194 ("Defendant, in its moving brief, fails to tether its deception argument to a specific cause

of action. It fails to specifically explain what element of each of the consumer fraud statute requires deception and why they fail under each cause of action.").

Nonetheless, Plaintiff has not opposed Defendant's argument that the complaint failed to state a claim by failing to identify the elements of each of cause of action. Moreover, because the CA safe harbor provisions, section 17533.7, are part of the FAL, the Court will address the FAL and related UCL and CLRA causes of action. However, because Defendant has failed to meet its burden on the remaining state law claims of breach of express warranty, unjust enrichment, negligent misrepresentation and intentional misrepresentation, the Court DENIES Defendant's motion to dismiss.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice", Cal. Bus. and Prof. Code § 17200; the FAL prohibits "any unfair, deceptive, untrue, or misleading advertising", *see* Cal. Bus. and Prof. Code §§ 17200, 17500; and the CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices", Cal. Civ. Code § 1770. "[A]ny violation of the false advertising law . . . necessarily violates" the UCL. *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 950 243 (2002), *as modified* (May 22, 2002) (citation omitted). Claims under the UCL, FAL and CLRA are governed by the "reasonable consumer" test." *Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted); *Hadley v. Kellogg Sales Co.,* 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017) (courts often analyze claims under the CLRA, FAL and UCL together).

Under the reasonable consumer standard, plaintiffs "must show that members of the public are likely to be deceived" by the alleged representations. *Williams*, 552 F.3d at 938 (citation and internal quotation marks omitted). Likely to deceive requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled", and not a "mere possibility" that the label or advertising "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003)).

1    The complaint alleges violations of the CLRA, UCL and FAL arguing Plaintiff,

2   including reasonable consumers, were deceived and misled by Defendant's "Made in the

3   USA" representations that all ingredients and components originated from the United

4   States, when in fact they did not.  (Dkt. No. 1, Compl. ¶¶ 88, 138, 139, 140, 152.)

5    Defendant argues that Plaintiff has not alleged facts establishing a violation of the

6   CA MUSA Rule and that the Products fall outside the CA safe harbor provisions.  (Dkt.

7   No. 10-1 at 11-17.)  Plaintiff responds that Defendant's products are not subject to the

8   CA safe harbor provisions and plausibly alleges that a substantial portion of its products

9   all contain foreign sourced ingredients sufficient to fall outside the safe harbor

10   provisions' percentages.  (Dkt. No. 12 at 19-21.)

11    As recited above, the CA MUSA Rule provides,

12    It is unlawful … to sell or offer for sale in this state any merchandise on
     which merchandise or on its container there appears the words "Made in
13    U.S.A.," "Made in America," "U.S.A.," or similar words if the merchandise
     or any article, unit, or part thereof, has been entirely or substantially made,
14    manufactured, or produced outside of the United States.

15

16   Cal. Bus. & Prof. Code § 17533.7(a).  The CA safe harbor provisions provide,

17    (b) This section shall not apply to merchandise made, manufactured, or
     produced in the United States that has one or more articles, units, or parts
18    from outside of the United States, if all of the articles, units, or parts of the
     merchandise obtained from outside the United States constitute not more
19    than 5 percent of the final wholesale value of the manufactured product.

20

21    (c)(1) This section shall not apply to merchandise made, manufactured, or
     produced in the United States that has one or more articles, units, or parts
22    from outside of the United States, if both of the following apply:
     (A) The manufacturer of the merchandise shows that it can neither produce
23    the article, unit, or part within the United States nor obtain the article, unit,
     or part of the merchandise from a domestic source.
24    (B) All of the articles, units, or parts of the merchandise obtained from
     outside the United States constitute not more than 10 percent of the final
25    wholesale value of the manufactured product.

26

27   Cal. Bus. & Prof. Code §§ 17533.7(b), (c).

28

14

The complaint alleges that Plaintiff purchased Defendant's Silk Express Miracle Silk Leave-In which contained foreign ingredients of palm oil, camellia sinensis (tea) leaf extract, hydrolyzed silk, and silk amino acids. (Dkt. No. 1, Compl. ¶¶ 7, 45.) She alleges that the Product is "wholly or substantially made with ingredients and components sourced, grown, or manufactured outside the United States." (*Id.* ¶ 23, *see also* ¶ 44 ("they are substantially made with foreign ingredients"); ¶ 6 ("substantially and materially composed of indispensable foreign ingredients".) Accepting the allegations in the complaint as true and construing them in the light most favorable to the non-moving party, the complaint sufficiently alleges a violation of the CA MUSA rule because it alleges that the ingredients and components are wholly or substantially manufactured outside the United States.

However, as to whether Plaintiff has plausibly alleged that Defendant's Products fall outside the CA safe harbor provisions, the complaint fails to allege any percentage of the foreign sourced ingredients and as such fails to state a claim under Rule 8, and necessarily under Rule 9(b). *See Hood v. Handi-Foil Corp.,* Case No. 24-cv-02373-RS, 2024 WL 4008711, at *3 (N.D. Cal. Aug. 29, 2024) (general claim that "parts of Defendants' products obtained from outside the United States constitute more than 10 percent of the final wholesale value of the manufactured products are insufficient and vague" and formulaic recitation of the elements); *Hass v. Citizens of Human., LLC*, Case No.: 14-CV-1404 JLS (WVG), 2016 WL 7097870, at *4 (S.D. Cal. Dec. 6, 2016) (dismissing as insufficient allegation that products "are substantially made, manufactured, or produced from component parts that are manufactured *outside of the United States*" and the mere listing of foreign materials does not raise plausible inference that these materials constitute more than five or ten percent of the wholesale value of the product) (emphasis in original); *Alaei v. Rockstar, Inc.*, 224 F. Supp. 3d 992, 1000 (S.D. Cal. 2016) ("Plaintiff fails to specify where the allegedly foreign-sourced ingredients were made and what percentage of Defendants' products are comprised of foreign-sourced ingredients.").

1    Plaintiff argues that because silk is in the Product name, it is an important

2 ingredient for purposes of marketing, formulation and the wholesale value of the Product,

3 and combined with other ingredients such as palm oil, the combination is sufficient to

4 plausibly allege the foreign ingredients in the Products are more than 5% or even 10% of

5 the final wholesale value of the Product.  (Dkt. No. 12 at 20.)  However, these assertions

6 in the opposition are not in the complaint and the Court declines to consider allegations

7 outside the complaint.

8    Plaintiff also argues that the CA safe harbor provisions are an affirmative defense

9 that Defendant must bear in defending the case and not a pleading requirement.  (Dkt.

10 No. 12 at 25-26.)  The Court disagrees.  Because "the safe harbor doctrine . . . precludes

11 plaintiffs from bringing claims based on 'actions the Legislature permits[]'", *Ebner*, 818

12 F.3d at 963 (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163,

13 (1999)), caselaw supports Defendant's position that Plaintiff must allege that its products

14 fall outside the safe harbor provisions on a Rule 12(b)(6) motion because section 17533.7

15 makes lawful the labeling of products that contain a certain percentage of ingredients

16 from foreign sources.  *See Fitzpatrick v. Tyson Foods, Inc.*. 714 Fed. App'x 797, 798 (9th

17 Cir. 2018) (affirming Rule 12(b)(6) dismissal of California's consumer protection statutes

18 based on the safe harbor provisions of section 17533.7) (citing *Ebner*, 838 F.3d at 963);

19 *Hood v. Handi-Foil Corp.,* Case No. 24-cv-02373-RS, 2024 WL 4008711, at *3 (N.D.

20 Cal. Aug. 29, 2024) (rejecting argument that safe harbor is an affirmative defense).

21 Accordingly, the Court does not find Plaintiff's argument that the CA safe harbor

22 provisions are an affirmative defense to be persuasive or legally supportive.

23    Accordingly, the Court DENIES Defendant's motion to dismiss for failing to

24 allege a violation of the CA MUSA Rule and GRANTS Defendant's motion to dismiss

25 for failing to allege that foreign ingredients in the Products fall outside the CA safe

26 harbor provisions.

27 / / /

28 / / /

## C.    Standing

Defendant contends that Plaintiff has failed to plead that she has standing to sue over unidentified products with unidentified ingredients that she did not purchase.  (Dkt. No. 10-1 at 9-10; Dkt. No. 13 at 14.)  Plaintiff responds that she has identified four other substantially similar products but appears to suggest that she also has standing over unidentified products.  (Dkt. No. 12 at 31-33.)

Absent controlling authority, the prevailing view among district courts in the Ninth Circuit is to allow class action plaintiffs to have constitutional and statutory standing to bring claims for products they did not purchase "so long as the products and alleged misrepresentations are substantially similar."  *Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *see also Brown v. Hain Celestial Grp., Inc*., 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012); *Werdebaugh v. Blue Diamond Growers*, Case No.: 12–CV–02724–LHK, 2013 WL 5487236, at *13 (N.D. Cal. Oct. 2, 2013) ("prevailing view within this district (and elsewhere in the Ninth Circuit), which holds that a plaintiff may  . . . have constitutional and statutory standing to assert claims based on misrepresentations appearing on products he did not purchase" . . . "as long as the products and claims at issue are 'substantially similar'").

Here, both parties apply the prevailing view allowing a class action plaintiff to have standing over products as long as the products and ingredients are substantially similar.  According to the complaint, Plaintiff purchased Silk Express Miracle Silk Leave-In product, which contains palm oil, Camellia sinensis leaf extract, hydrolyzed silk, and silk amino acids.  (Dkt. No. 1, Compl. ¶¶ 7, 45.)  She also alleges four other products, that she did not purchase, make an unqualified "Made in the USA" on their labels: Miracle Moisture Shampoo, Silk Express Miracle Daily Shampoo, Miracle Daily Conditioner, and Miracle Blowdry Volumizer when they contain ingredients not sourced from the United States.  (*Id.* ¶¶ 46, 47.)  Defendant does not dispute that these four identified products that Plaintiff did not purchase are substantially similar but focus on

Plaintiff's overbroad allegation that she has standing over all products featured on Defendant's website. (*See* Dkt. No. 10-1; Dkt. No. 13.)

The complaint alleges "[i]n addition to the unqualified 'Made in the USA' representation on the Product, It's a 10's other haircare products – including, but not limited to, those featured on its website (together with the Product, the 'Class Products') – also display the same unqualified 'Made in the USA' representation or a similar unqualified U.S. origin claim." (Dkt. No. 1, Compl. ¶ 11.) To the extent Plaintiff is alleging she has standing to sue over all products on Defendant's website, Plaintiff does not have standing to bring claims for these unidentified products. *See Hass,* 2016 WL 7097870, at *7 (plaintiff lacked standing because she failed "to describe or even identify any other type of apparel product made and sold by Defendant, let alone demonstrate that those products and their labels are substantially similar to the [product] Plaintiff purchased."); *see also Ruiz v. Celsius Holdings*, No. 3:21cv128-GPC(KSC), 2021 WL 5811264, at *4 (S.D. Cal. July 27, 2021) (plaintiffs had standing to sue products they did not purchase where specific product names were identified in the complaint[5]). Accordingly, the Court GRANTS dismissal of Plaintiff's claims of Products not identified in the complaint.

**D.    Leave to Amend**

Where a motion to dismiss is granted, leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting S*chreiber Distrib. Co. v. Serv Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto,* 957 F.2d at 658*; Schreiber,* 806 F.2d at 1401. Here, Plaintiff seeks leave to amend on any claims that the Court

---

[5] *See Ruiz v. Celsius Holdings*, No. 3:21cv128-GPC(KSC), Dkt. No. 13, FAC ¶ 28 n.3.

dismisses.  (Dkt. No. 12 at 33.)  Because Plaintiff can cure the deficiencies, the Court GRANTS Plaintiff leave to file an amended complaint.  *See De Soto*, 957 F.2d at 658.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend.  Plaintiff shall file an amended complaint within twenty-one (21) days of the Court's order.

IT IS SO ORDERED.

Dated:  July 31, 2025

Hon. Gonzalo P. Curiel
United States District Judge

25CV377-GPC(BLM)