UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CORONA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IT'S A NEW 10, LLC,<br><br>Defendant. | Case No.: 25CV377-GPC(BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br>**[Dkt. No. 24.]** |

Before the Court is Defendant's motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). (Dkt. No. 24.) Plaintiff filed an opposition. (Dkt. No. 29.) Defendant filed a reply. (Dkt. No. 30.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss.

## Background

On February 20, 2025, Plaintiff Maria Corona ("Plaintiff") filed a putative class action complaint against Defendant It's a New 10, LLC ("Defendant") for unlawfully labeling its haircare products with "Made in the USA," when they allegedly contain undisclosed foreign-sourced ingredients and components. (Dkt. No. 1, Compl.) After

the Court granted in part and denied in part Defendant's motion to dismiss on July 31, 2025, (Dkt. No. 15), Plaintiff filed a first amended complaint ("FAC") on August 21, 2025.  (Dkt. No. 18.)

The FAC alleges that around May 5, 2024, Plaintiff was shopping at the Marshalls Store at 1834 Marron Road in Carlsbad, California looking to purchase haircare products.  (*Id.* ¶ 75.)  While browsing, she noted Defendant's Silk Express Miracle Silk Leave-In, (the "Product"), with the label "Made in the USA" on its Principal Display Panel ("PDP"), the most prominent and noticeable location on the product.  (*Id.* ¶¶ 7, 39, 76.)  Companies typically place the most important and highest-value selling points on the product's PDP because it is the part that faces the consumer when placed on a shelf or displayed on a website, allowing customers to see the claims without needing to turn the product around.  (*Id.* ¶¶ 40, 41.)  Plaintiff also alleges that 44 other products, including the Product, of Defendant identified in Exhibit A ("Class Products") display the same unqualified "Made in the USA" representation or similar unqualified U.S. origin claim.  (*Id.* ¶ 11.)  Looking to purchase a product made in the U.S.A. and relying on the unqualified "Made in the USA" representation on the Product, Plaintiff purchased the Product for about $8.99 (excluding tax) for her personal use.  (*Id.* ¶ 77.)  The "Made in the USA" representation was material in her decision to purchase the Product, and had she known the Product was not of U.S. origin, she would not have purchased it.  (*Id.* ¶¶ 81, 83.)

On the Product, the text "MADE IN THE USA" is in capital letters and distinguished with metallic text and placed underneath the size or quantity of the Product and isolated from other wording.  (*Id.* ¶¶ 42, 43.)  Plaintiff claims that the "Made in the USA" is in the same location on the packaging of nearly every one of Defendant's products, or in some cases, in another conspicuous location on the product label.  (*Id.* ¶ 44.)  The "Made in the USA" is prominently visible to the consumers whether they see the product on a store shelf or view it online.  (*Id.* ¶ 45.)  Despite the "Made in the USA"

claim, Plaintiff asserts that the Class Products are substantially made with foreign ingredients and consumers have been misled.  (*Id.* ¶¶ 46, 47.)

Plaintiff asserts that the Product she purchased contains palm oil, and hydrolyzed silk which are ingredients that do not originate from or are not sourced in the United States.  (*Id.* ¶ 48.)  In addition, on information and belief, the Product includes panthenol and *Morus alba* (White Mulberry) leaf extract which are of foreign origin.  (*Id.* ¶ 49.)  Marketing materials highlight these foreign sourced ingredients as "key" or "featured" ingredients meaning they are the most valuable, functional components of the product to consumers, which thereby render unqualified "Made in the U.S.A." representations false and misleading.  (*Id.* ¶ 50.)

According to the FAC, Defendant and its reseller's websites do not provide a full ingredient list for each Class Product and do not display images of the ingredient list on the back panels of the Class Products; instead, they highlight only the "key" or "featured" ingredients.  (*Id.* ¶¶ 51-53.)  For instance, the Product lists hydrolyzed silk, white mulberry leaf extract and palm oil as "key" ingredients and the Miracle Leave-In Product lists sunflower seed extract, green tea leaf extract, silk amino acids, aloe vera and panthenol as its "key" ingredients.  (*Id.* ¶¶ 52, 53.)

In the Product, Plaintiff notes that "silk" is featured prominently in its name twice highlighting the inclusion of silk or silk derivatives and the importance consumers place on the value silk or silk derivatives when buying the Product.  (*Id.* ¶ 54.)  As such, consumers would reasonably expect silk to be a key, functional ingredient, or in other words, expect the Product to contain more than a negligible amount of silk "in a concentration sufficient to provide the functional benefits commonly associated with silk." (*Id.*)  Further, given the functional importance of silk, palm oil and white mulberry leaf extract rather than the less expensive synthetically and mass produced chemical components that make up the remainder of the Product, it is not plausible that the combined value or cost of the three ingredients along with panthenol, represents less than 10 percent in the Product.  (*Id.* ¶ 56.)  Moreover, because panthenol, palm oil, hydrolyzed

silk and white mulberry leaf extract are listed as the eleventh[1], thirteenth, fourteenth and fifteenth listed ingredients out of nineteen, they reflect more than a *de minimis* presence in the Product. (*Id.* ¶ 57.) Lastly, on information and belief, many of the synthetic ingredients in the Product as well as the packaging are sourced from outside the United States. (*Id.* ¶ 58.)

Plaintiff also asserts that the United States has the capacity to grow, process, manufacture and source silk, palm oil, mulberry leaf extract, plastic packaging and other components from domestic suppliers and Defendant could have contracted with manufacturers to create domestic supply chains for each of those ingredients. (*Id.* ¶ 59.) Upon information and belief, the hydrolyzed silk used by Defendant underwent a manufacturing process outside the United States because it is more economical where labor costs are less expensive and regulatory requirements are less rigorous and there is a need to preserve quality through conducting the hydrolysis process near the source of the silk production before transport to the United States. (*Id.* ¶ 60.)

The Miracle Leave-In contains *Camellia sinensis* (green tea) leaf extract, and silk amino acids, and neither originate in the United States. (*Id.* ¶ 61.) Upon information and belief, the product also includes aloe vera, panthenol and sunflower seed extract which are of foreign origin, including the plastic packaging used in the product. (*Id.*) Defendant and its retail partners highlight these as "key" ingredients. (*Id.* ¶¶ 62, 63.) Next, the Miracle Moisture Shampoo contains *Euterpe oleracea* (acai) fruit extract, sunflower seed extract, *Aspalathus linearis* (rooibos) leaf extract, *Morinda citrifolia* (noni) fruit extract, *Moringa oleifera* seed extract, and other ingredients which are not sourced from the United States despite the unqualified "Made in the U.S.A." label on its packaging. (*Id.* ¶ 64.)

---

[1] In her opposition, Plaintiff notes that panthenol was inadvertently listed as the "eleventh" ingredient in paragraph 57 of the FAC but it is the tenth ingredient. (Dkt. No. 29 at 18-19 n.4.)

Meanwhile, the Silk Express Miracle Daily Shampoo contains palm oil, hydrolyzed silk, white mulberry leaf extract and sunflower seed extract; Miracle Daily Conditioner contains silk amino acids and *Colocasia antiquorum* root extract; and Miracle Blowdry Volumizer contains hydrolyzed silk, acai fruit extract, green tea extract, and *Camellia oleifera* leaf extract. (*Id.* ¶ 65.)

Plaintiff claims that the facts as to the Class Products' content is within the exclusive knowledge, control and possession of Defendant and cannot be fully ascertained without discovery. (*Id.* ¶ 66.) The ratio of the ingredients in the Product and Class Products is exclusively within the knowledge, control and possession of Defendant and without such knowledge, Plaintiff cannot calculate the relative cost contribution of each component or group components to the overall product. (*Id.* ¶ 69.) The exact cost of each individual ingredient and component used to produce the Class Products is within the exclusive knowledge, control and possession of Defendant and Plaintiff has no means to determine or even approximate the costs with precisions because market prices available online does not reveal how much Defendant actually paid. (*Id.* ¶ 70.) The identity of Defendant's supplier, contract manufacturers and other agents involved in the production of the Class Products are also not publicly available and unknown to Plaintiff making it impossible her to plead details without discovery. (*Id.* ¶ 71.)

American consumers view products, ingredients and components made in the United States as being of higher quality than their foreign counterparts. (*Id.* ¶ 73.) As such, Defendant either charges a premium for its products compared to its competitors or gains a competitive advantage by having its products chosen over others based on false, unqualified "Made in the USA" claims. (*Id.* ¶ 74.) Plaintiff alleges that Defendant's "Made in the USA" representation on its products is false, unqualified, unfair and deceptive. (*Id.* ¶ 63.)

As such, Plaintiff alleges violations of (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*; (3) California's False Advertising Law

("FAL"), Bus. & Prof. Code § 17500, *et seq.*; (4) breach of express warranty; (5) unjust enrichment; (6) negligent misrepresentation; and (7) intentional misrepresentation. (*Id.* ¶¶ 109-221.)

Defendant moves to dismiss all claims in the first amended complaint for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6), 9(b) and for lack of subject matter jurisdiction under Rule 12(b)(1), and the motion is fully briefed. (Dkt. Nos. 24, 25, 30.)

## Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits challenges to a court's subject matter jurisdiction and includes a challenge for lack of Article III standing. *See Chandler v. State Farm Mut. Auto. Inc. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Article III, Section 2 the United States Constitution requires that a plaintiff have standing to bring a claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires that a plaintiff show that he has (1) "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent" (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). The plaintiff has the burden to allege Article III standing. *See Lujan*, 504 U.S. at 561. A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.,* 658 F.3d 1060, 1069 (9th Cir. 2011). Additionally, if plaintiffs "state that they would not have purchased [a product] had there been proper disclosure" of relevant facts, that is sufficient to plead causation. *Id.* at 1070.

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient

facts to support a cognizable legal theory. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1081 (9th Cir. 2024) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), backed by sufficient facts that make the claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, it requires enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In reviewing the plausibility of a complaint, courts must "accept factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Dent v. Nat'l Football League,* 968 F.3d 1126, 1130 (9th Cir. 2020). But courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023). Ultimately, the court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

C.   **Federal Rule of Civil Procedure 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff bringing such a claim to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To properly plead fraud with particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id*. The purpose of Rule 9(b) is to require that allegations be "specific enough to give defendants notice of the particular misconduct which is alleged … so that they can defend

against the charge and not just deny that they have done anything wrong." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 785 (9th Cir. 2024).

## Discussion

### A.  California Safe Harbor Rule Analysis

Defendant moves to dismiss all causes of action arguing that the FAC fails to allege facts that the Products fall outside California's safe harbor rules because Plaintiff has not specifically articulated "any percentage of the foreign sourced ingredients." (Dkt. No. 24-1 at 14-17.[2])  In response, Plaintiff claims she has plausibly alleged that the foreign ingredients in the Products are more than 10% of the final wholesale value of the merchandise under Cal. Bus. & Prof. Code §§ 17533.7(b) & (c).  (Dkt. No. 29 at 16-20.) As discussed in the next section, the Court finds that Plaintiff only has standing to sue over the Product that she purchased and not the remaining unpurchased Class Products. Accordingly, the Court will solely analyze the Product under the Safe Harbor Rule.

Under the California Made in the U.S.A. ("CA MUSA") Rule,

> It is unlawful … to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

Cal. Bus. & Prof. Code § 17533.7(a).  Two amendments to the CA MUSA Rule, Cal. Bus. & Prof. Code sections 17533.7(b) and (c), ("CA safe harbor provisions"), effective 2016, provide exceptions making a "Made in the USA" label lawful.  It provides that,

> (b) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product.

---

[2] Page numbers are based on the CM/ECF pagination.

> (c)(1) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if both of the following apply:
> (A) The manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source.
> (B) All of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 10 percent of the final wholesale value of the manufactured product.

Cal. Bus. & Prof. Code §§ 17533.7(b), (c).

In its prior order, the Court concluded that the complaint failed to allege any percentage of the foreign sourced ingredients or any allegations that the combination of foreign ingredients are more than 10% of the final wholesale value of the Product, and as such, failed to state a claim under Rule 8, and necessarily under Rule 9(b). (Dkt. No. 15 at 15-16.) Plaintiff amended the complaint to cure this deficiency.

As an initial matter, the safe harbor provisions do not require that a plaintiff assert the exact percentage of any foreign sourced materials. *See* Cal. Bus. & Prof. Code §§ 17533.7(b), (c); *see Daldalian v. Pepsico., Inc.*, Case No. 2:25-cv-01491-WLH-E 2025 WL 2778326, at *4 (C.D. Cal. Sep. 3, 2025) ("The Court does not expect Plaintiff to have proven [the amount of foreign sourced ingredients] with mathematical precision; rather, Plaintiff needed only to set forth some set of facts, other than the Class Products being "substantially" and "materially composed of indispensable foreign ingredients"); *Claiborne v. Church & Dwight Co., Inc.*, Case No.: 3:17-cv-00746-L-JLB, 2017 WL 5256752, at *2 (S.D. Cal. Nov. 13, 2017) (plaintiff "need only plausibly allege that the foreign wholesale value is greater than ten percent. There is no requirement that a plaintiff allege exactly how much more than ten percent of the total wholesale value stems from abroad."). Plaintiff does not dispute that she has not alleged the specific percentage of foreign sourced ingredients; in fact, she maintains she cannot state exactly

what percentage of the final wholesale value[3] comes from outside the U.S. since that information is solely within the knowledge, control and possession of Defendant and its agent.  (Dkt. No. 18, FAC ¶¶ 69-71.)  Rather than a specific percentage, the Court must determine whether Plaintiff has plausibly alleged that the foreign sourced ingredients in the Product constitute more than 10% of the final wholesale value.

The FAC alleges the Product contains four ingredients, palm oil, hydrolyzed silk, panthenol and white mulberry leaf extract, and they do not originate from or are not sourced in the United States, (*Id.* ¶¶ 48, 49.)  In marketing the Product, Defendant highlights these foreign sourced ingredients as "key" or "featured" meaning they are the most valuable, functional components of the product to consumers.  (*Id.* ¶¶ 50-53.)  Further, because "silk" is featured twice in the Product's name, Silk Express Miracle Silk Leave-In, it highlights the inclusion of silk or silk derivatives and it would be reasonable to expect the Product to contain more than a negligible amount of silk "in a concentration sufficient to provide the functional benefits commonly associated with silk." (*Id.* ¶ 54.)  Given the functional importance of silk, palm oil and white mulberry leaf extract rather than the less expensive synthetically and mass produced chemical components that make up the remainder of the Product, Plaintiff claims it is not plausible that the combined value or cost of the three ingredients along with panthenol, represents less than 10 percent in the Product.  (*Id.* ¶ 56.)  Moreover, because panthenol, palm oil, hydrolyzed silk and white mulberry leaf extract are listed as the eleventh[4], thirteenth, fourteenth and

---

[3] Plaintiff argues that "wholesale value" focuses on "value", not "cost."  (Dkt. No. 29 at 16 (citing *McCoy v. McCormick & Co., Inc.*, Case No. 1:25-cv-00231 JLT SAB, 2025 WL 2315457, at *4 n. 5 (E.D. Cal. Aug. 12, 2025).)  Defendant disputes Plaintiff's characterization. (Dkt. No. 30 at 7-8.) The court in *McCoy* addressed "value" and "cost" in the context of a conflict preemption analysis.  The Court has not found a case that has meaningfully addressed the meaning of "final wholesale value" under California's safe harbor rules. Notwithstanding the potential difference in the meaning of "wholesale value", the key to the Court's analysis, as discussed below, is assessing the ratio of the foreign sourced ingredients in relation to the non-foreign ingredients in the Product.

[4] In her opposition, Plaintiff notes that panthenol was inadvertently listed as the "eleventh" ingredient in paragraph 57 of the FAC but it is the tenth ingredient. (Dkt. No. 29 at 18-19 n.4.)

fifteenth ingredients out of nineteen, they reflect more than a *de minimis* presence in the Product.  (*Id.* ¶ 57.)  Finally, on information and belief, many of the synthetic ingredients in the Product as well as the packaging are sourced from outside the United States.[5]  (*Id.* ¶ 58.)

      As a starting point, conclusory allegations that the foreign ingredients constitute a substantial or material component of a product are not sufficient to state a "Made in the U.S.A." misrepresentation claim.  *See Daldalian v. Pepsico., Inc.*, Case No. 2:25-cv-01491-WLH-E 2025 WL 2778326, at *4 (C.D. Cal. Sep. 3, 2025) (claims that the class products are "substantially" and "materially composed of indispensable foreign ingredients" are insufficient to allege that they fall outside the 5% safe harbor limit of Section 17533.7); *Hood v. Handi-Foil Corp.,* Case No. 24-cv-02373-RS, 2024 WL 4008711, at *3 (N.D. Cal. Aug. 29, 2024) (general claim that "parts of Defendants' products obtained from outside the United States constitute more than 10 percent of the final wholesale value of the manufactured products are insufficient and vague" and formulaic recitation of the elements); *Hass v Citizens of Humanity, LLC*, Case No.: 14-CV-1404 JLS (WVG), 2016 WL 7097870, at *4 (S.D. Cal. Dec. 6, 2016) (dismissing as insufficient allegation that Defendant's products "are substantially made, manufactured, or produced from <u>component parts</u> that are manufactured *outside of the United States*") (emphasis in original).  Here, Plaintiff has alleged more than a conclusory formulaic recitation of the elements of her claim.

---

[5] Defendant challenges Plaintiff's allegations based on information and belief arguing they cannot satisfy Rule 9(b).  However, allegations based on information and belief may be sufficient to satisfy Rule 9(b) as long as there is a factual basis for the belief.  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Further, Rule 9(b)'s standard "may be relaxed with respect to matters within the opposing party's knowledge."  *Id*.  Here, Plaintiff has sufficiently provided factual bases by providing citations in the FAC to support her belief, (Dkt. No. 18, FAC ¶ 49 n. 7, 8; id. ¶ 58 n. 11), and has alleged that information about the Product's contents, such as the ratio of each ingredient and cost of each ingredient, are within the exclusive knowledge, control and possession of Defendant.  (Id. ¶¶ 66, 69-71.)  Therefore, Plaintiff's allegations, on information and belief, may be considered by the Court.

Where a plaintiff has alleged more than conclusory allegations, two cases provide guidance. In *Flodin*, despite two attempts at amending the complaint, the Court granted dismissal of the plaintiff's claims based on the defendant's "Made in the USA" representation where the plaintiff alleged that the one foreign ingredient, avocado, was a "key" or "top" ingredient in the product at issue and avocado was listed as the seventh ingredient out of 35-40 ingredients listed. *See Flodin v. Central Garden & Pet Co.*, Case No. 21-cv-01631-JST, 2023 WL 4686016, at *2 (N.D. Cal. July 21, 2023). The district court concluded that Plaintiff may have alleged a possibility that avocado represents more than 5% of the final wholesale value but not plausibility. *Id.*

In *Claiborne*, the plaintiff brought suit against a condom manufacturer alleging the labeling of its product with "Made in the U.S.A" was false because natural latex is made outside the United States. *Claiborne v. Church & Dwight Co., Inc.*, Case No.: 3:17-cv-00746-L-JLB, 2017 WL 5256752, at *1 (S.D. Cal. Nov. 13, 2017). According to the plaintiff's allegations, the main ingredient in the product was natural latex. *Id.* Plaintiff alleged the United States' production of natural latex was minimal and 90% of the global supply came from Southeast Asia. *Id.* Because the U.S. was the world's leading consumer of natural latex, condom manufacturers, who use natural latex, depended on foreign imports. *Id.* The district court concluded these allegations plausibly stated that the foreign wholesale percentage value of the product was greater than 10 percent and denied the motion to dismiss. *Id.* at *2. Both courts in *Flodin* and *Claiborne* considered the ratio or concentration of the foreign ingredients in relation to the non-foreign ingredients.

In this case, Plaintiff provides a number of specific allegations that support her "Made in the U.S.A." fraudulent misrepresentation claim. In contrast to the single ingredient, avocado, which was seventh out of 35-40 ingredients in *Flodin*, Plaintiff alleges that the Product includes four foreign ingredients listed as the eleventh, thirteenth, fourteenth and fifteenth ingredients out of nineteen ingredients, and together, they represent more than a *de minimis* amount in the Product. (Dkt. No. 18, FAC ¶ 57.)

Based on the number of ingredients and the placement of the foreign ingredients on the ingredient list, Plaintiff conducts an estimated calculation of the ingredient proportions to conclude that the four alleged foreign ingredients amount to more than 20% of the ingredients in the Product. (Dkt. No. 29 at 18 n.4.) Additional allegations to support Plaintiff's claim include showing, with citations to websites, that palm oil and hydrolyzed silk are not currently produced in the U.S. and where, outside the U.S., palm oil and hydrolyzed silk are primarily produced, (Dkt. No. 18, FAC ¶ 47 n. 5, 6), and showing why White Mulberry leaf extract is likely not sourced in the U.S. and where it and panthenol are potentially cultivated, (*id.* ¶ 49 n. 7, 8). *See Alaei v. Rockstar, Inc.*, 224 F. Supp. 3d 992, 1000 (S.D. Cal. 2016) (Rule 9(b) not satisfied where plaintiff did not specify "where the allegedly foreign-sourced ingredients were made and what percentage of Defendants' products are comprised of foreign-sourced ingredients."). Further support includes Defendant's marketing of the Product highlighting *solely* the foreign ingredients, on its and its retailers websites, and the use of the word "silk" twice in the Product's name. These allegations, in combination, and viewing them in the light most favorable to Plaintiff, create a reasonable inference that the four foreign ingredients in the Product constitute "more than 10% of the final wholesale value of the manufactured product." *See* Cal. Bus. & Prof. Code §§ 17533.78(c).

      The Court also concludes that Rule 9(b) has been satisfied as Plaintiff has identified the who, Defendant; the what, the Product; the when, four years prior to the filing of this action; the where, Product sold in California; and how, by making false and misleading "Made in the U.S.A." claims. Plaintiff also specifically alleges that the "Made in the U.S.A." claim is false and misleading because the Product fails to disclose the presence of foreign ingredients and/or components in the Product. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (in addition to the who, what, when, where and how, Rule 9(b) also requires a plaintiff to plead "what is false or misleading about the [purportedly fraudulent] statement, and why it is false.").

Accordingly, the Court DENIES Defendant's motion to dismiss all causes of action as they are all based on the false and misleading "Made in the U.S.A." claim relating to the sale of the Product.

**B.      Rule 12(b)(1) – Article III Standing**

Defendant moves to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff has failed to plead that she has standing over products she did not purchase because she has not suffered an injury in fact that is concrete and did not rely on them to her detriment.  (Dkt. No. 24-1 at 23-26.)  Plaintiff responds that the Class Products are substantially similar to the Product she purchased arguing they are all hair care products with foreign ingredients and uniformly have the "Made in the U.S.A" label.  (Dkt. No. 29 at 27-29.)

As discussed above, to have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision*.*"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Plaintiff, as the party asserting federal jurisdiction, bears the burden of establishing Article III standing.  *See Lujan*, 504 U.S. at 561.

Absent controlling authority, the prevailing view among district courts in the Ninth Circuit is to allow class action plaintiffs to have constitutional standing to bring claims for products they did not purchase "so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *see also Brown v. Hain Celestial Grp., Inc*., 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012).  If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co*., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).  However, "[w]here the alleged misrepresentations or accused products are

dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

In making this determination, courts consider "whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Wilson v. Frito-Lay N. Am., Inc.,* 961 F. Supp. 2d 1134, 1141 (N.D. Cal. 2013) (citing *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C 11–2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012)); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014) (*same*).

Here, both parties apply the prevailing view. Defendant argues that the Class Products in Exhibit A have vastly different ingredients, despite some overlap, and vary in the types of hair products. (Dkt. No. 24-1 at 25.) Plaintiff maintains she has standing to assert claims for substantially similar unpurchased products because the "Made in the U.S.A." label is the same on all the Class Products and to the extent the court must consider ingredients and kind, Plaintiff contends that even though there may be different ingredients, they are all allegedly foreign, and are all haircare products. (Dkt. No. 29 at 28-29.)

According to the FAC, Plaintiff purchased Silk Express Miracle Silk Leave-In product, which contains palm oil, hydrolyzed silk, panthenol and Morus Alba (White Mulberry) leaf extract, and all are alleged to be of foreign origin. (Dkt. No. 18, FAC ¶¶ 7, 48, 49.) The Court concluded that Plaintiff has sufficiently alleged that the foreign ingredients in the Product fall outside of California's safe harbor rules because she has alleged that the foreign ingredients comprise "more than 10% of the final wholesale value of the manufactured product."

The FAC also alleges five other products, that Plaintiff did not purchase, make an unqualified "Made in the USA" on their labels: (1) Miracle Leave-In, (2) Miracle Moisture Shampoo, (3) Silk Express Miracle Daily Shampoo, (4) Miracle Daily Conditioner, and (5) Miracle Blowdry Volumizer because they contain ingredients not

sourced from the United States. (*Id.* ¶¶ 61, 64, 65.) Plaintiff also includes a list of an additional 38 products[6], without differentiation, showing each product's ingredient list with foreign ingredients in bold and likely foreign ingredients in italics and citations as to where each foreign ingredient is cultivated, sourced, produced or grown. (Dkt. No. 18-1, Compl., Ex. A.) Furthermore, the Class Products include "***All products sold during the Class Period that have since been discontinued or renamed, and are therefore not specifically identified herein, are nonetheless subject to this First Amended Complaint and shall be included in the Class Products***." (*Id.*, Ex. A at 2 (emphasis in original).) The FAC alleges the Class Products all display the same unqualified 'Made in the USA' representation or a similar unqualified U.S. origin claim. (Dkt. No. 18, FAC ¶ 11.)

First, while Plaintiff purchased a leave-in product, the Product and many of the listed Class Products are not of the same kind. Specifically, Exhibit A includes shampoos, conditioners, styling gels, leave-in products, hair masks, finishing sprays, a curl cream, a gelled oil, a shave cream, a shine spray, a styling oil, a styling serum, a styling balm and a styling mousse. (Dkt. No. 18-1, FAC, Ex. A at 2-3.) Only the ten leave-in products can be said to be of the same kind.

Next, none of the Product and Class Products consist of the same ingredients though some Class Products contain one or more of the same foreign ingredients as in the Product but in different ratios. Each Class Product contains a varying number of different ingredients, foreign and non-foreign. Some Class Products have as little as eleven ingredients while others have up to fifty-six ingredients. As noted above, courts consider the ratio or concentration of the foreign ingredients relative to the non-foreign ingredients and Plaintiff has not shown that each Class Product's concentration of foreign ingredients is substantially similar to the Product.[7]

---

[6] Exhibit A includes 44 products which include the Product and the five named products in the FAC.
[7] While the ratio or concentration can likely be calculated based on the ingredient list in Exhibit A, Plaintiff has not done the calculation and the Court declines to conduct the work for her. *See Wilson*, 916 F. Supp. 2d at 1141 ("Plaintiffs take no time to explain how each of the eighty-five new Products

Despite the differences in kind and ingredients, Plaintiff claims the Product and the Class Products have the same "Made in the U.S.A." label located in the same location of each product.  However, merely have the same label is not enough to support standing especially if product composition or ingredient is important.  *C.f. Miller*, 912 F. Supp. 2d at 869 ("Where product composition is less important, the cases turn on whether the alleged misrepresentations are sufficiently similar across product lines.").  Here, the product composition or ingredient is important to Plaintiff's claim because she must show each Class Product falls outside of the safe harbor provisions requiring that foreign ingredients cannot exceed 10% of the final wholesale value of the product.

The *Baum* case is instructive.  There, the plaintiff alleged that the products' casings and containers (tubes plastic bottles and resealable caps) were made outside the U.S. despite the "Made in the U.S.A." label on its products.  *Baum v. J-B Weld Co., LLC*, Case No. 19-cv-01718-EMC, 2019 WL 6841231, at *2 (N.D. Cal. Dec. 16, 2019).  After receiving guidance from the court that it was looking for a level of specificity to show that the unpurchased products are substantially similar to the purchased products, the plaintiff filed a second amended complaint, and divided the 24 purchased and unpurchased products into four categories by type of packaging.  *Id.* at *5. Plaintiff provided specific allegations that the products were similarly packaged, and each contained the "Made in the U.S.A." label.  *Id.*  Ultimately, the court concluded that because the plaintiff had described sufficient similarities among the containers within each category, standing existed for the unpurchased products where the plaintiff "alleged that the 24 products contain identical 'Made in U.S.A.' misrepresentations, are similar to

---

are actionably mislabeled, and the Court is not inclined to pore over each ingredient list and guess."). Moreover, even if Plaintiff could conduct the mathematical calculation, the Court also considered marketing materials and the Product name in concluding that the combination of these allegations plausibly alleges that the foreign ingredients constitute "more than 10% of the final wholesale value" of the Product. Plaintiff has not provided specificity as to each Class Product's marketing and whether the name impacts the importance of "key" foreign ingredients.

each other in kind, and are comprised of the same foreign-sourced components that render the 'Made in U.S.A.' representations false." *Id.*

Sufficient similarity was also present in *Sinatro v. Barilla America, Inc.*, 635 F. Supp. 3d 858, 877 (N.D. Cal. 2022), where the plaintiffs alleged that the label, "Italy's #1 Brand of Pasta" surrounded by the colors of the Italian flag represented that the dry pasta products were made in Italy from ingredients sourced in Italy and was deceptive because the products were made in Iowa and New York using ingredients sourced from countries other than Italy. *Id*. at 865. The plaintiff asserted standing for a pasta product he purchased and for 52 unpurchased products. *Id.* at 877. The court held that the plaintiffs had standing to sue over the unpurchased products because the labels on the front of the packaging were the same, the brand name was the same, and the dry pastas were made from the same ingredients or types of ingredients and "milled in the same or similar manner, and manufactured into the finished Products in the same or similar manner." *Id.*

Here, Plaintiff has presented a list of 43 products she did not purchase and each has a wide range of ingredients, including many other foreign ingredients not contained in the Product. While Plaintiff identifies the foreign and likely foreign ingredients in each product, she has not shown that the unpurchased Class Products are similar, in ingredients, and in kind, between product lines. Her argument that the Class Products are all hair care products is overly broad. *See Oxina v. Lands' End, Inc*., No. 14–cv–2577–MMA (NLS), 2015 WL 4272058, at *6 (S.D. Cal. June 19, 2015) (standing not sufficiently alleged between purchased tie and unpurchased "apparel" which "could conceivably encompass hundreds, or even thousands of different types of products, including those presumably made of different materials, and bearing different physical labels than the Necktie purchased by Plaintiff.") Also, Plaintiff's argument that the Class Products all contain foreign sourced ingredients does not demonstrate how the amount of foreign ingredients in the Class Products exceed 10% of the final wholesale value and fall outside the California safe harbor rules. Because Plaintiff's claims hinge on the amount of foreign ingredients in the product in relation to the non-foreign ingredients, Plaintiff

has not shown that these Class Products are substantially similar to the Product. Further, Plaintiff has not demonstrated that the Class Products' marketing and product name are substantially similar to the Product. Additionally, Plaintiff has not shown that the "Made in the U.S.A." representation is the same in all the Class Products or in the same location, as Plaintiff has only shown the PDPs of nine products.[8] (Dkt. No. 18-1, Ex. A at 26-29; Dkt. No. 18, Compl. ¶ 53.) Moreover, even though Exhibit A contains ten leave-in products, Plaintiff has failed to allege and explain how the leave-in products in Exhibit A are substantially similar in ingredients, and that the foreign ingredients "constitute not more than 10 percent of the final wholesale value of the manufactured product." Lastly, Plaintiff's attempt to assert standing to sue over products that have since been discontinued or renamed and not specifically identified also fails as no specific products have been identified and no allegations presented to show they are substantially similar to the Product she purchased.

Accordingly, the Court concludes that Plaintiff does not have standing over products she did not purchase, and GRANTS Defendant's motion to dismiss Plaintiff's claims over any unpurchased products. *See Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1116-17 (N.D. Cal. 2022) (purchased product of food pouches and puffs was similar in nature to unpurchased product of food pouches and puffs both in name and ingredients and plaintiff had standing but did not have standing over unpurchased products of bowls, bars, cereals, baking mixes, greek yogis, creamies, and cookies as they contained different ingredients from the purchased products and are thus markedly

---

[8] Plaintiff's claim that the "Made in the U.S.A." label is located in the same location and in the same manner is contradicted by the allegations in the FAC. The FAC asserts that the Class Products "display the same unqualified 'Made in the USA' representation or *a similar unqualified U.S. origin claim*" and that the "Made in the U.S.A." representation "is displayed in the same location on the packaging of nearly every Class Product or, *in some cases, in another conspicuous location on the product label*." (Dkt. No. 18, FAC ¶¶ 11, 44.) Without providing the location and the specific "Made in the U.S.A." claim for each Class Product, Plaintiff has failed to demonstrate that each Class Product is substantially similar to the Product.

distinct from the purchased products which was dispositive even though they had the same challenged nutrient content claims); *Yamasaki v. Zicam LLC*, Case No. 21-cv-02596-HSG, 2021 WL 4951435, at *3 (N.D. Cal. Oct. 25, 2021) ("The Court accordingly finds that Plaintiff has failed to establish that Zicam Nasal Spray and Zicam Nasal Swabs, which do not contain zinc, are substantially similar to the other unpurchased products that contain zinc.").

## Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss the first amended complaint.

Prior to the filing of the FAC, Defendant filed a motion for reconsideration of the Court's order granting in part and denying in part Defendant's motion to dismiss which is fully briefed. (Dkt. Nos. 16, 25, 27.) Because Plaintiff filed a first amended complaint, and the Court has ruled on Defendant's motion to dismiss the FAC, the Court DENIES Defendant's motion for reconsideration of the Court's order on Defendant's motion to dismiss the original complaint as MOOT. (Dkt. No. 16.) The hearing date set on December 12, 2025 shall be **vacated.**

IT IS SO ORDERED.

Dated: December 9, 2025

Hon. Gonzalo P. Curiel
United States District Judge